United States District Court
Southern District of Texas

**ENTERED**

March 11, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JASON DAVID SHEEDY, | § | |
| TDCJ #01360261 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-2853 |
| | § | |
| LASHEA THOMPSON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jason David Sheedy, an inmate in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ), has filed a civil-rights complaint under 42 U.S.C. § 1983 alleging that several TDCJ officers at the Jester III Unit violated his rights under the United States Constitution and state law. He named as defendants: (1) correctional officer Lashea Thompson; (2) correctional officer Lasisi Sule; (3) Lieutenant George Okoro; (4) correctional officer Nimat Tiamiyu; (5) grievance investigator Ashley Lopez; (6) Assistant Warden Bruce Frederick; (7) correctional officer Oluwaseun Gborjoh; and (8) TDCJ Executive Director Bryan Collier. Sheedy represents himself and has been granted leave to proceed without prepayment of the filing fee.

Defendants Thompson, Sule, Okoro, Tiamiyu, Lopez, Frederick, and Gborjoh have filed a motion for summary judgment. (Docket Entry No. 36). Sheedy has filed a response (Docket Entry No. 46) and the defendants have filed a reply (Docket Entry No. 48). Having considered the motion, the response, the reply, the applicable law, and the record, the court grants the defendants' motion and dismisses this case. The reasons are explained below.

# I.    Background

## A.    Sheedy's Allegations

Sheedy's amended complaint, addendum to the complaint, and memorandum of law in support of the complaint lay out his allegations.  (*See* Docket Entry No. 1; Docket Entry No. 7; Docket Entry No. 10).  In 2018—as a result of a previous diagnosis of coronary artery disease and pulmonary embolism—Sheedy was assigned a Priority Level One ("P1") heat score by TDCJ. (Docket Entry No. 1 at 5; Docket Entry No. 7 at 6; Docket Entry No. 10 at 7).  Sheedy states that this heat score requires him to be housed in an air-conditioned environment and that his medical conditions can cause heat-related illnesses.  (Docket Entry No. 7 at 6).  During hot weather, Sheedy uses respite areas at the unit to cool off.  (*See* Docket Entry No. 10 at 7).

On October 23, 2020, Sheedy filed a lawsuit in the 458th District Court of Fort Bend County, Cause No. 20-DCV-277933, against Assistant Warden Frederick concerning craft shop property he believes was stolen by TDCJ officers.[1]  (Docket Entry No. 1 at 9; *see also* Docket Entry No. 10 at 7, 8).  Sheedy asserts that the filing of the state court lawsuit is the reason the defendants began to harass and retaliate against him.  (Docket Entry No. 1 at 9).

Sheedy generally alleges that the defendants have retaliated against him and violated his rights to petition the government for a redress of grievances, to due process of law, and to be free of cruel and unusual punishment.  (*See* Docket Entry No. 1; Docket Entry No. 7; Docket Entry No. 10).  He sues the defendants in their individual capacities, and he also sues grievance investigator Lopez in her official capacity.  Sheedy seeks various forms of declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages.  (Docket Entry No. 1 at 51–52).

---

[1] The court refers to this lawsuit as the "state court lawsuit."

The chronology underlying Sheedy's claims, summarized against each defendant, is based on the pleadings, (Docket Entry No. 1; Docket Entry No. 10), and the memorandum of law in support of the complaint, (Docket Entry No. 7).

### 1.    Assistant Warden Bruce Frederick

Sheedy asserts that on February 12, 2021, he mailed Assistant Warden Frederick a copy of the default judgment against Frederick in the state court lawsuit. (Docket Entry No. 1 at 9). On March 12, 2021, Sheedy was transferred to the Darrington Unit.[2] (*Id.* at 10; Docket Entry No. 7 at 8). Sheedy's transfer to the Darrington Unit was apparently a waypoint to an ultimate transfer to the Joe Nay Unit. (*See* Docket Entry No. 1 at 10). Sheedy claims that he "suffer[ed] violent conditions" at the Darrington Unit, including exposure to COVID-19 and "a riot" that caused him to suffer from nose bleeds, migraine headaches, and smoke inhalation. (Docket Entry No. 7 at 8, 26, 34). Sheedy does not provide a date when the riot allegedly occurred. Sheedy had hand surgery at John Sealy Hospital sometime in April 2021 and on his discharge was sent to the Jester III Unit. (*See id.* at 8–9). On April 24, 2021, Sheedy asked Frederick for his property and Frederick allegedly responded: "No your [sic] in transit, you can't have your property." (Docket Entry No. 1 at 13). On April 30, 2021, Sheedy's property that was being stored at the Jester III Unit was returned to him. (*Id.* at 14). Sheedy was without his legal materials for 105 days. (Docket Entry No. 1 at 11, 21; *see also* Docket Entry No. 7 at 11, 26, 31).

Sheedy asserts that Assistant Warden Frederick violated his right to access the courts by Frederick subjecting him to "diesel therapy,"[3] by depriving him of his legal materials, and by

---

[2] The Darrington Unit has since been renamed the Memorial Unit.

[3] In their motion for summary judgment, the defendants comment that "'[d]iesel therapy' is slang used among inmates to describe unnecessary transfers of an inmate from one prison unit to another, the connotation being that the harsh transportation itself is used as a form of punishment." (Docket Entry No. 36 at 2 n.2).

moving him to a "more harsh" prison.  (*See* Docket Entry No. 10 at 6, 17; Docket Entry No. 7 at

26).  Sheedy claims that Frederick transferred him to a "more harsh" prison in retaliation for filing

the state court lawsuit and for filing grievances.  (Docket Entry No. 1 at 10; Docket Entry No. 7 at

8; Docket Entry No. 10 at 6, 16–17).  He claims that Frederick did not follow TDCJ policy

regarding the transfer between prison units because Sheedy was never sent to the Joe Nay Unit,

and instead was sent to the Jester III Unit.  (Docket Entry No. 1 at 12).  Sheedy further claims that

Frederick ordered the property officer at the Jester III Unit to "hold" Sheedy's property in

retaliation for Sheedy filing the state court lawsuit.  (*Id.* at 13).  Finally, Sheedy argues that

Frederick violated his Eighth Amendment rights by transferring him to a different prison where

Sheedy was subjected to "violent conditions," including exposure to the COVID-19 virus and a

riot.  (*See* Docket Entry No. 1 at 49; Docket Entry No. 7 at 8, 26, 34).

### 2. *Correctional Officer Lashea Thompson*

Sheedy claims that in retaliation for filing a grievance about Officer Thompson in

September 2020 and for filing the state court lawsuit in October 2020, Officer Thompson retaliated

against him on July 16, 2021, by separating him from other inmates in the chapel respite area at

the Jester III Unit.  (*See* Docket Entry No. 10 at 8; *see also* Docket Entry No. 10 at 5, 8; Docket

Entry No. 1 at 21–24).  He alleges that Thompson then filed a false disciplinary charge against

him.  (*See* Docket Entry No. 10 at 8–9).  Sheedy asserts that eight days later, on July 24, 2021,

Thompson ordered him to sit in a specific classroom at the respite area in the chapel.  (Docket

Entry No. 1 at 22; Docket Entry No. 10 at 9).  Thompson then ordered all of the other inmates out

of the room except Sheedy and another inmate, initiated an emergency response for officer

assistance when there was "no reason for the emergency response," and began to "scream and yell

waiving a gas can in [Sheedy]'s face[.]"  (Docket Entry No. 1 at 22–23; *see also* Docket Entry No.

7 at 11; Docket Entry No. 10 at 9). The correctional officers who responded handcuffed Sheedy and removed him from the respite area. (Docket Entry No. 10 at 9; *see also* Docket Entry No. 7 at 11). Sheedy asserts that Thompson then filed another false disciplinary case against him for refusing to obey an order. (Docket Entry No. 1 at 23; *see also* Docket Entry No. 10 at 9). Sheedy also alleges that on September 11, 2021, Thompson directed two other correctional officers to remove Sheedy from the respite area because "Lt. Omotunde wants [Sheedy] in his office." (Docket Entry No. 10 at 10).

### 3.    *Correctional Officer Nimat Tiamiyu*

Sheedy alleges that in June 2021, Officer Tiamiyu denied him access to the chapel respite area. (Docket Entry No. 1 at 19; Docket Entry No. 10 at 14). Sheedy claims that Tiamiyu knew that Sheedy had a heat restriction because Tiamiyu was told by medical staff. (Docket Entry No. 10 at 12). As a result of not being allowed to use the respite area and having to return to his dormitory, Sheedy suffered from intense migraines, dizziness, and heat stress. (Docket Entry No. 1 at 19). Officer Tiamiyu would not let Sheedy enter the respite area on another occasion because he possessed a commissary purchased "cool down" towel.[4] (*See* Docket Entry No. 10 at 14). Around August 20, 2021, Officer Tiamiyu denied Sheedy entry into a respite area because Sheedy had prescription eye drops on his person, despite allowing other inmates into the respite area who possessed prescription pills, eyeglasses, and other medical necessities. (Docket Entry No. 1 at 27; Docket Entry No. 7 at 12; Docket Entry No. 10 at 14).

---

[4] It is not clear when this alleged incident took place. It appears that it may have happened in June 2021. (*See* Docket Entry No. 10 at 14). Sheedy also appears to allege that Officer Tiamiyu denied him entry to the respite area on at least one other occasion, but Sheedy does not provide the date that this alleged denial of entry took place. (*See id.* at 13) (Sheedy alleging that Officer Tiamiyu denied him entry to the respite area because he had a pen, a book, and he was whispering).

Sheedy filed grievances about Officer Tiamiyu's refusal to let him into the respite areas. (*See* Docket Entry No. 10 at 14). Sheedy claims that Tiamiyu retaliated against him for using the grievance system by writing false disciplinary cases about him. (*See id.* at 5, 12, 14; Docket Entry No. 1 at 12, 17, 28; Docket Entry No. 7 at 12).

### 4. *Investigator Ashley Lopez*

Sheedy sues grievance investigator Ashley Lopez in both her personal and official capacity. (*See* Docket Entry No. 1 at 3). Sheedy claims that Lopez violated his constitutional rights by refusing to process grievances, intentionally destroying grievances, and not returning grievances. (*See id.* at 5–7, 9, 13, 14, 16, 20, 21, 26, 27, 28, 33, 34, 45; Docket Entry No. 7 at 7, 10, 18; Docket Entry No. 10 at 5). He claims that these actions violated TDCJ policy. (Docket Entry No. 10 at 5). He further claims that Lopez retaliated against him and has violated his access to courts. (*Id.* at 5, 15–16).

### 5. *Correctional Officers Lasisi Sule and Oluwaseun Gborjoh and Lieutenant George Okoro*

Sheedy has also named Lieutenant George Okoro and Correctional Officers Lasisi Sule and Oluwaseun Gborjoh are defendants. In his response to the defendants' summary judgment motion, Sheedy agrees that summary judgment should be granted in favor of Okoro, Sule, and Gborjoh.[5] Summary judgment is granted in favor of defendants Okoro, Sule, and Gborjoh and the claims against them are dismissed with prejudice.

---

[5] In the response, Sheedy states that he agrees "to partial summary judgment as to specific defendants" and that "there are no issues of genuine dispute of material fact requiring a trial for Defendants[:] Sule, Okoro, and Gborjoh. The Court should GRANT summary judgment for these Defendants only." (Docket Entry No. 46 at 1).

### B.    Procedural Posture

Sheedy filed his complaint on August 22, 2022.  (*See* Docket Entry No. 1).  After screening Sheedy's pleadings as required by the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court dismissed the claims against Collier for failure to state a claim. (Docket Entry No. 14).  The court ordered service of the pleadings on the remaining defendants. (Docket Entry No. 13).  Shortly after the defendants filed their answer, Sheedy asked that the case be held while he had eye surgery.  (*See* Docket Entry No. 19; Docket Entry No. 24).  The court granted Sheedy's motion and this case was administratively closed for approximately six months. On Sheedy's motion, the case was reopened and the defendants filed their motion for summary judgment.  (Docket Entry No. 36).  The defendants argue that Sheedy's official capacity claims against Lopez are barred by sovereign immunity.  They argue that certain of the claims should be dismissed based on Sheedy's failure to exhaust administrative remedies as required by the PLRA. And they argue that the defendants are entitled to qualified immunity because the summary judgment evidence shows a lack of a constitutional violation.

Sheedy has filed a response.  (Docket Entry No. 46).  The defendants have filed a motion asking the court to strike Sheedy's response because it was filed past the deadline, or in the alternative, to allow a reply to Sheedy's response to the defendants' motion for summary judgment (Docket Entry No. 48).  The court denies the defendants' request to strike Sheedy's response and instead has considered the arguments in the reply.

## II.    The Standards of Review

### A.    Action Under 42 U.S.C. § 1983

Sheedy sues the defendants under 42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and

constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). When no competent evidence exists to sustain a finding that the defendant violated the plaintiff's constitutional rights, summary judgment is properly entered. *See, e.g.*, *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

### B.    The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). The initial burden falls on the movant to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). The non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d

533, 538 (5th Cir. 2012) (per curiam) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).  "Conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment . . . ."  *Smith v. Reg'l Trans. Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).  Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts."  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quotation omitted).  Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts.  *See McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).  Further, a court need not comb the record to find evidence that will permit a non-movant to survive summary judgment.  *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

### C.     Qualified Immunity

The defendants assert that Sheedy's claims against them should be dismissed because they are entitled to qualified immunity.  The doctrine of qualified immunity affords prison officials protection from individual liability for damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense does not apply.  *See McClendon v. City of Columbia*, 305 F.3d 314, 323

(5th Cir. 2002) (per curiam). To satisfy this burden, the plaintiff must show that the defendant violated the plaintiff's constitutional rights under clearly established law and that the defendant's actions were objectively unreasonable in light of that clearly established law. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). If the plaintiff fails to prove either element, the defendant is entitled to immunity. *See Pearson*, 555 U.S. at 236–37.

### D.      Pleadings by Self-Represented Litigants

Although Sheedy is representing himself, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a self-represented litigant of his burden in opposing a summary judgment motion. *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam). Even a self-represented plaintiff must specifically refer to evidence in the summary judgment record to place that evidence properly before the court. *See EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se pleadings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence . . . .") (cleaned up).

III.    Discussion[6]

    A.    The Claims Against Assistant Warden Bruce Frederick

        1.    *The Claim of Retaliation*

Sheedy alleges that Assistant Warden Frederick engaged in "diesel therapy" and transferred him to a "more harsh" prison[7] in retaliation for filing the state court lawsuit and for filing grievances. (Docket Entry No. 1 at 10; Docket Entry No. 7 at 8; Docket Entry No. 10 at 6). Sheedy further claims that Frederick ordered the property officer at the Jester III Unit to "hold" his property in retaliation for Sheedy filing the state court lawsuit. (Docket Entry No. 1 at 13).

"Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (quoting *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009)). "To state a

___

[6] The defendants argue that Sheedy cannot proceed with certain of his claims because he has failed to exhaust administrative remedies as required by the PLRA. (*See* Docket Entry No. 36 at 20–25). In response, Sheedy asserts that the grievance process was not available to him because his grievances were not accepted for filing, grievances were not processed or returned to him, and grievances were intentionally destroyed. (*See* Docket Entry No. 46 at 7–8). The court need not parse through Sheedy's grievance records, however, to decide the exhaustion issue because the PLRA's exhaustion requirement is not jurisdictional and, as will be discussed, the defendants are entitled to dismissal of the claims against them based on qualified immunity. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("[E]ven if dismissals under § 1997e(c)(2) typically occur when the opportunity to pursue administrative remedies has passed, § 1997e(c)(2) still serves a useful function by making it clear that the PLRA exhaustion requirement is not jurisdictional, and thus allowing a district court to dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies."); *Johnson v. Johnson*, 385 F.3d 503, 522, 522 n.14 (5th Cir. 2004) (explaining that the court need not decide whether the plaintiff properly exhausted his claims as to some of the defendants because the defendants were "clearly entitled to dismissal based on qualified immunity"); *Valentine v. Collier*, 993 F.3d 270, 291 (5th Cir. 2021) (commenting that there is "no need to consider Defendants' argument that the PLRA requirement of exhaustion of administrative remedies has not been met requiring dismissal of Plaintiffs' claims" because the court reversed the trial court on the merits of the claims and rendered judgment in favor of defendants) (citing *Woodford*, 548 U.S. at 101).

[7] Sheedy claims he "suffer[ed] violent conditions on the Darrington Unit[,]" which included exposure to the COVID-19 virus and being subjected to a riot which caused him nose bleeds, intense migraines, and smoke inhalation, (Docket Entry No. 7 at 8; *see also id.* at 26, 34).

valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted). An inmate must allege more than his personal belief that he is the victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). To demonstrate that a defendant acted with intent to retaliate, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

The retaliation claim against Assistant Warden Frederick fails because Sheedy has not shown that Frederick possessed the requisite intent to retaliate or that the causation element has been met. Sheedy claims that he mailed Frederick a copy of the default judgment in the state court lawsuit on February 12, 2021, and that one month later, on March 12, 2021, Sheedy was transferred to the Darrington Unit. The mere fact that Sheedy mailed Frederick a copy of the default judgment does not mean that Frederick was actually aware that default had been entered against him, or that he was even aware of the existence of the state court lawsuit in general. Sheedy alleges that Frederick retaliated against him for filing grievances, but Sheedy does not allege when the grievances that were the impetus of Frederick's retaliatory conduct were filed or that Frederick knew that Sheedy had filed grievances. Sheedy has not shown the required intent or causation for a retaliation claim.

Sheedy has failed to establish a constitutional violation, and Assistant Warden Frederick is entitled to qualified immunity on Sheedy's retaliation claim under 42 U.S.C. § 1983.

2.    *The Claim of Denial of Access to Courts*

Sheedy asserts that Assistant Warden Frederick transferred him to another prison unit and deprived him of his legal materials for approximately 105 days to prevent further litigation in the state court lawsuit. (*See* Docket Entry No. 10 at 17; Docket Entry No. 7 at 26). Sheedy alleges that he "never hears anything from Fort Bend County while at the Darrington Unit, nor did plaintiff's filings make it to the Court[.]" (Docket Entry No. 7 at 26).

"It has long been recognized that prisoners generally enjoy a constitutional right of access to the courts." *Johnson*, 110 F.3d at 310 (citations omitted); *see also DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (explaining that prisoners' right of access to the courts "is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment."). "This right of access for prisoners is not unlimited, however; rather, it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson*, 110 F.3d at 310–11 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). To succeed on a claim of denial of access to courts, a plaintiff must demonstrate "that he suffered 'actual injury' in that the prison 'hindered his efforts' to pursue a nonfrivolous action." *DeMarco*, 914 F.3d at 387 (citation omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1338 (5th Cir. 1996) (explaining that "to make out a claim that his constitutional right of access to the courts has been violated" the inmate "must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts") (citing *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993)). "A prisoner must therefore describe the predicate claim with sufficient detail to show that it is 'arguable' and involves 'more than hope.'" *DeMarco*, 914 F.3d at 387–88 (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

Sheedy's claim that Frederick used "diesel therapy" and withheld his legal materials for some amount of time to prevent further litigation in the state court lawsuit fails to state a claim for relief. Besides describing the state court lawsuit as seeking relief for craft shop property he believes was stolen by TDCJ officers, Sheedy does not provide any additional details about the facts or claims in that lawsuit. This court is unable to discern the viability of his claims in the state court lawsuit. Sheedy has failed to state a claim for relief. *See DeMarco*, 914 F.3d at 387–88 (explaining that to prevail on an access to courts claim, a prisoner must "describe the predicate claim with sufficient detail to show that it is 'arguable' and involves 'more than hope'") (quoting *Christopher*, 536 U.S. at 416).

Sheedy also fails to state a claim for relief in that he does not explain how being separated from his legal materials for a relatively short period of time and how by being transferred to another unit caused him to suffer an actual injury. *See, e.g.*, *DeMarco*, 914 F.3d at 387; *Eason*, 73 F.3d at 1338. Sheedy states that his filings did not "make it" to the Fort Bend County court, but review of the docket in the state court lawsuit (Cause No. 20-DCV-277933 in the 458th District Court of Fort Bend County) shows that many, many letters and motions from Sheedy were received by the court, including shortly after he was transferred to the Darrington Unit.[8] Without demonstrating that his position as a litigant was prejudiced by his denial of access to the courts, Sheedy does not have a viable claim. *See Eason*, 73 F.3d at 1338.

---

[8] For example, on March 19, 2021, the 458th District Court docketed two filings dated March 15, 2021, from Sheedy. On May 5, 2021, the 458th District Court docketed a change of address dated April 30, 2021, from Sheedy. On June 17, 2021, the 458th District Court docketed a filing dated June 14, 2021, from Sheedy. Review of the docket for the 458th District Court shows that Sheedy has submitted filings almost monthly—and in some months, numerous filings—since he filed the case in October 2020. *See Case Records*, Ft. Bend County, https://tylerpaw.fortbendcountytx.gov/PublicAccess/Search.aspx?ID=400 (last visited Feb. 21, 2025).

Sheedy does not allege facts showing that Assistant Warden Frederick violated his right to access the courts. Sheedy does not point to or describe a nonfrivolous action that he was prejudiced in pursuing by being separated from his legal materials or by being transferred between prison units. Sheedy has failed to establish a constitutional violation, and Assistant Warden Frederick is entitled to qualified immunity on Sheedy's denial of access to courts claim under 42 U.S.C. § 1983.

### 3.    The Eighth Amendment Claim

Sheedy argues that Assistant Warden Frederick violated his Eighth Amendment rights when he used "diesel therapy" to transfer him to a different prison unit where Sheedy was subjected to "violent conditions," including exposure to the COVID-19 virus and a riot which caused him to suffer from nose bleeds, intense migraines, and smoke inhalation. (*See* Docket Entry No. 10 at 6, 17; Docket Entry No. 7 at 8, 26, 34; Docket Entry No. 1 at 49).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam). An inmate must establish two elements for a successful Eighth Amendment challenge. "First, he must demonstrate that the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (cleaned up). For this objective component, "extreme deprivations are required to make out a conditions-of-confinement claim." *Davis v. Scott*, 157

F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1,8 (1992)).   Courts examining prison conditions must measure the conditions against "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Second, an inmate must show that the defendant possessed a "sufficiently culpable state of mind." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). That is, an inmate must show that the defendant was deliberately indifferent to the plaintiff's health or safety. *See id.* at 352 (citing *Farmer*, 511 U.S. at 834).   "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official acts with deliberate indifference only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.   Because deliberate indifference requires knowledge of the risk, "mere negligence" does not satisfy the deliberate-indifference standard. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Sheedy describes the "violent conditions" he encountered at the Darrington Unit as including a riot that caused him to suffer from nose bleeds, intense migraines, and smoke inhalation, and exposure to the COVID-19 virus.  (*See* Docket Entry No. 7 at 8, 26, 34).  Besides simply listing these conditions, Sheedy does not explain how these conditions harmed him or how his exposure to them resulted in a substantial risk of serious harm.  He provides no details about when or where the "riot" occurred or his involvement in it.  He does not describe how exposure to the COVID-19 virus presented a substantial risk of particular harm to him.  He has not met the objective part of an Eighth Amendment claim.

He also does not meet the subjective element. Sheedy does not allege facts that could demonstrate that Assistant Warden Frederick was deliberately indifferent to his health or safety by transferring him to a different prison. Sheedy provides no explanation for how Assistant Warden Frederick would have known that Sheedy would have been exposed to or affected by a "riot" that allegedly took place at the Darrington Unit. The mere fact that Sheedy was exposed to the COVID-19 virus at a prison unit in the Spring of 2021 which occurred throughout the prison system does not show that Frederick knew of and disregarded an excessive risk to Sheedy's health or safety.

Sheedy, thus, has failed to raise a genuine issue of material fact as to whether Frederick was aware of an excessive risk to Sheedy's health or safety because he was transferred to a different prison unit. Sheedy's conclusory allegation do not suffice to meet his burden at the summary judgment stage. *See Delta & Pine Land Co.*, 530 F.3d at 399. Sheedy has failed to establish a constitutional violation, and Assistant Warden Frederick is entitled to qualified immunity on Sheedy's Eighth Amendment claim under 42 U.S.C. § 1983.[9]

### B.    The Claims Against Correctional Officer Lashea Thompson

#### 1.    *Eighth Amendment Claim*

Sheedy claims that Officer Thompson violated his Eighth Amendment rights because she knew that he was "medically heat sensitive" but she denied him access to a respite areas on July 16 and 24, 2021.

---

[9] Sheedy also argues that Frederick did not follow TDCJ rules and policies when Sheedy was transferred between TDCJ units and when he did not give Sheedy his property while Sheedy was at the Jester III Unit. (*See* Docket Entry No. 1 at 12–14). To the extent Sheedy is arguing that the failure to follow TDCJ rules and policies is a violation of his constitutional rights, Frederick is entitled to summary judgment on this claim. The failure of prison officials to follow prison policy or rules does not amount to a constitutional violation. *See McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) ("An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim.") (citing *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989)); *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not a constitutional violation.") (citation omitted).

As discussed, an inmate must establish two elements for a successful Eighth Amendment challenge. "First, he must demonstrate that the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas*, 922 F.3d at 620 (cleaned up). Extreme cell temperatures without adequate remedial measures can violate the Eighth Amendment. *See Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) ("The Eighth Amendment 'guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'") (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)). Second, an inmate must show that the defendant was deliberately indifferent to the plaintiff's health or safety. *Palmer*, 193 F.3d at 352.

Sheedy has not met his burden to show a genuine factual dispute material to determining the subjective element of an Eighth Amendment claim against Officer Thompson. Although Sheedy makes the broad allegation that Thompson knew that he had been declared a medically heat sensitive inmate, (*see* Docket Entry No. 10 at 8), Sheedy does not allege how Thompson came to know about his status as a heat-protected inmate. Nor does Sheedy allege that he specifically told Officer Thompson that he had been designated as heat sensitive or that he reported any specific ailments to her. Sheedy has not asserted sufficient specific factual allegations showing that Officer Thompson knew that denying Sheedy access to the respite areas on July 16 and 24, 2021, posed a substantial risk to Sheedy, which she disregarded.

Sheedy also alleges that Officer Thompson denied him access to the respite area on July 16 because she initiated an emergency response for officer assistance when, according to him, there was no cause for an emergency response or for removing him from the respite area in handcuffs. Sheedy alleges that Officer Thompson denied him access to the respite area on July

24 because Lieutenant Omotunde wanted to see Sheedy in his office. These allegations do not support an inference that Officer Thompson possessed a "sufficiently culpable state of mind" to support Sheedy's claim that she was deliberately indifferent to his health or safety when she denied him access to the respite area of the chapel on these dates. *See Palmer*, 193 F.3d at 352.

Sheedy has failed to raise a genuine issue of material fact as to whether Officer Thompson was aware of an excessive risk to Sheedy's health or safety because he was denied access to the respite area on two days in July 2021. Sheedy's conclusory allegation do not suffice to meet his burden at the summary judgment stage. *See Delta & Pine Land Co.*, 530 F.3d at 399. Sheedy has failed to establish a constitutional violation, and Officer Thompson is entitled to qualified immunity on Sheedy's Eighth Amendment claim under 42 U.S.C. § 1983.

### 2. The Claim of Retaliation

Sheedy asserts that in retaliation for filing a grievance about Officer Thompson in September 2020 and for filing the state court lawsuit in October 2020, Officer Thompson retaliated against him by removing him from the respite area and writing false disciplinary cases against him.

As discussed, "[t]o state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs*, 541 F.3d at 270.

Sheedy alleges that Officer Thompson told him "on numerous occasions" that he "is the one filing grievances against me and filing lawsuits, they will never work, keep filing shit you know whose office I'm in everyday." (Docket Entry No. 1 at 31). Without providing a date, Sheedy alleges that Office Thompson said to him that "I looked you up, your [sic] a white ass Jew with a clan behind you, you filed a lawsuit against us for that motherf[*]cking craftshop, I'm glad

it's closed." (*Id.* at 32). These alleged statements, without more, do not show an intent on the part of Officer Thompson to retaliate against Sheedy. The mere fact that Thompson was aware that Sheedy had filed the state court lawsuit and was filing grievances about her does not show evidence of intent to retaliate on Thompson's part.

Sheedy does not provide the dates when Officer Thompson allegedly made these comments. It is not clear whether Thompson made the comments before or after she denied Sheedy access to the chapel respite area. Sheedy argues that the grievance filed against Officer Thompson in September 2020 and the state court lawsuit filed in October 2020 were the impetus for Officer Thompson denying him respite access and writing false disciplinary cases about him in July 2021. Seven months separate these acts from the alleged retaliatory actions. This timeline does not show a chronology of events from which retaliation on the part of Officer Thompson can plausibly be inferred. *See, e.g.*, *Cardenas v. Young*, 655 F. App'x 183, 186 (5th Cir. 2016) (per curiam) (finding that "retaliation cannot be plausibly inferred from the chronology of events alleged by [the plaintiff]" when the plaintiff engaged in the protected act five to six months before the alleged retaliation occurred); *Curtis v. Egan*, No. 6:17CV576, 2019 WL 7875057, at *20 (E.D. Tex. Oct. 30, 2019) (holding that the inmate failed to state a valid claim for retaliation when the alleged retaliatory act of receiving a minor disciplinary case occurred six months after the inmate engaged in the protected act), *report and recommendation adopted,* No. 6:17CV576, 2020 WL 132332 (E.D. Tex. Jan. 11, 2020).

Sheedy has failed to establish a constitutional violation, and Officer Thompson is entitled to qualified immunity on Sheedy's retaliation claim under 42 U.S.C. § 1983.

### C.    The Claims Against Correctional Officer Nimat Tiamiyu

#### 1.    *The Eighth Amendment Claim*

Sheedy claims that Officer Tiamiyu violated his rights under the Eighth Amendment by denying him access to the chapel respite area at least three times during the summer of 2021, despite being told by medical staff that Sheedy had a heat restriction.

As discussed above, an inmate must establish two elements for a successful Eighth Amendment challenge. "First, he must demonstrate that the alleged deprivation was objectively serious, exposing him to a substantial risk of serious harm and resulting in the denial of the minimal civilized measure of life's necessities." *Arenas*, 922 F.3d at 620 (cleaned up).  Second, an inmate must show that the defendant was deliberately indifferent to the plaintiff's health or safety. *Palmer*, 193 F.3d at 352.  A prison official acts with deliberate indifference only if the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Sheedy alleges that medical staff told Tiamiyu he had a heat restriction.  (*See* Docket Entry No. 10 at 12).  This non-specific allegation, however, does not meet Sheedy's burden to show the existence of a genuine factual dispute material to determining the subjective element of an Eighth Amendment claim against Officer Tiamiyu.  Sheedy does not state how he knows that medical staff told Officer Tiamiyu that he has a heat restriction.  Sheedy has not asserted specific factual allegations showing that Officer Tiamiyu knew that denying Sheedy access to the respite area on a handful of occasions in the summer of 2021 posed a substantial risk to Sheedy, which she disregarded.  Further, Sheedy alleges that the reasons Officer Tiamiyu gave for denying him access to the respite area were that he was attempting to bring in items that were not allowed.

These allegations do not show that Officer Tiamiyu possessed a "sufficiently culpable state of mind" as to support Sheedy's claim that Tiamiyu was deliberately indifferent to his health or safety when she denied him access to the respite area. *See Palmer*, 193 F.3d at 352.

Sheedy has failed to raise a genuine factual dispute material to determining to whether Officer Tiamiyu was aware of an excessive risk to Sheedy's health or safety because he was denied access to the respite area a handful of times in the summer of 2021. Sheedy's conclusory allegation do not meet his burden at the summary judgment stage. *See Delta & Pine Land Co.*, 530 F.3d at 399. Sheedy has failed to establish a constitutional violation, and Officer Tiamiyu is entitled to qualified immunity on Sheedy's Eighth Amendment claim under 42 U.S.C. § 1983.

### 2.    *The Retaliation Claim*

Sheedy claims that Tiamiyu retaliated against him for using the grievance system by writing false disciplinary cases about him. Without providing a date, Sheedy alleges that Officer Tiamiyu said to him, "you file grievances, your [sic] a trouble maker" (Docket Entry No. 7 at 12), and "You file grievances—we will ship you—this is why your in prison—you will never go home we will make sure of that—your [sic] a trouble maker." (Docket Entry No. 7 at 24, 29; Docket Entry No. 10 at 13). These alleged statements, without more, do not show an intent on the part of Officer Tiamiyu to retaliate against Sheedy. The fact that Tiamiyu called Sheedy a troublemaker, acknowledged that he files grievances, and threatened that he would be transferred to a different unit—especially when there is no evidence that Officer Tiamiyu held any decision-making authority over where Sheedy was housed—does not show evidence of intent to retaliate on Tiamiyu's part. *See Gibson v. Jean-Baptiste*, No. 18-50844, 2020 WL 2078307, at *1 (5th Cir. Apr. 29, 2020) ("[The Fifth Circuit] ha[s] consistently rejected threat-based retaliation claims.") (citing cases).

Because Sheedy has not met the intent or causation elements of a retaliation claim, he has failed to establish a constitutional violation, and Officer Tiamiyu is entitled to qualified immunity on Sheedy's retaliation claim under 42 U.S.C. § 1983.

**D.    The Claims Against Grievance Investigator Ashley Lopez**

*1.    Official-Capacity Claims*

To the extent that Sheedy seeks an award of money damages from Grievance Investigator Lopez in her official capacity, his claims are barred by sovereign immunity. Sovereign immunity bars actions against a state or a state official unless Congress has abrogated the immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* The State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (explaining that the Texas Legislature has not waived sovereign immunity for any claim brought under § 1983). In the absence of such a waiver, Sheedy's claims against Lopez in her official capacity are barred by the state's sovereign immunity.

The fact that Lopez is a state employee, rather than the state itself, does not change this analysis. When a state employee is sued in his or her official capacity, the state is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"). Any claim for money

23

damages against Lopez in her official capacity is construed as claims against the State of Texas and are barred by sovereign immunity. These claims are dismissed with prejudice.

2.    *Personal-Capacity Claims*

Sheedy has also sued Lopez in her personal capacity. Sheedy alleges that Lopez violated his due process rights, right to access the courts, and TDCJ policy by destroying his grievances, failing to process his grievances, and not returning properly submitted grievances.

Lopez is entitled to summary judgment on Sheedy's claims that she violated his due process rights by mishandling grievances because a prisoner "has no right to either the adequacy or the result of prison administrative grievance procedures[.]" *Jones v. Lumpkin*, No. 23-40612, 2024 WL 1994279, at *2 (5th Cir. May 6, 2024) (affirming dismissal of an inmate's claims related to the denial of his grievances). That a grievance or complaint was not investigated or resolved to an inmate's satisfaction does not implicate constitutionally protected rights. *See Schwarzer v. Wainright*, 810 F. App'x 358, 360 (5th Cir. 2020) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (affirming the trial court's dismissal of an inmate's claim that his grievances were mishandled or improperly denied, because prisoners have no due-process rights in the inmate grievance process); *Grogan v. Kumar*, 873 F.3d 273, 280 (5th Cir. 2017) ("[I]t is well established that prisoners have no due process rights in the inmate grievance process.") (citation omitted); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that a plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances); *Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331, at *1 (5th

Cir. 1996) (per curiam) (holding that an inmate's claim that the defendant's failure to investigate his grievance "raises no constitutional issue") (citation omitted).

Sheedy's claim that Lopez's refusal to process his grievances denied his constitutional right to access the courts fails to state a claim for relief. "Prisoners do not have a constitutional right to grievance procedures, and a prisoner's right of access to the courts is not compromised by the prison's refusal to entertain his grievance[.]" *Cordero v. Kelley*, No. 21-1498, 2022 WL 212828, at *2 (3d Cir. Jan. 24, 2022) (internal citations and quotation marks omitted); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); *Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) ("[The prison's] failure to provide [the plaintiff] grievance forms and respond to his grievances did not deny him access to the courts because he nowhere alleges that [the prison] prevented him from preparing initial pleadings in a civil action regarding his confinement or a petition for a writ of habeas corpus.").

Lopez is also entitled to summary judgment as to Sheedy's claim that she failed to follow TDCJ policy when processing his grievances. The mere failure of prison officials to follow prison policy or rules does not amount to a constitutional violation. *See McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) ("An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim.") (citing *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989)); *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) ("[A] violation of prison regulations in itself is not a constitutional violation.") (citation omitted).

Sheedy has failed to establish a constitutional violation, and Lopez is entitled to qualified immunity on Sheedy's claims against her under 42 U.S.C. § 1983.

### E.    The Remaining State Law Claims

Sheedy purports to bring several state law claims against the defendants. (*See* Docket Entry No. 1 at 50). A federal district court has supplemental jurisdiction over state-law claims that are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over state law claims after dismissing the federal claims. *See St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009*); see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Generally, when all federal claims have been dismissed at an early stage, a district court should dismiss any pendent state-law claims without prejudice. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.") (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

Sheedy's federal claims have been dismissed. The court declines to exercise supplemental jurisdiction over any state law claims against the defendants. Any state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

## IV.    Conclusion

The motion for summary judgment filed by defendants Lashea Thompson, Lasisi Sule, George Okoro, Nimat Tiamiyu, Ashley Lopez, Bruce Frederick, and Oluwaseun Gborjoh, (Docket Entry No. 36), is granted. The claims brought under 42 U.S.C. § 1983 against these defendants are dismissed with prejudice. Any state law claims against the defendants are dismissed without

prejudice. The defendants' motion to strike, (Docket Entry No. 48), is denied. Any remaining pending motions are denied as moot. Final judgment will be entered separately.

      SIGNED on March 10, 2025, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge